UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

YOLANNY GUZMAN BAEZ DE MEJIA AND JOEL ELIAS
MEJIA, CO-PERSONAL REPRESENTATIVES
OF THE ESTATE OF JAY DARWIN MEJIA GUZMAN,
                Plaintiff,
V.
UNITED STATES OF AMERICA,
                Defendant.

# COMPLAINT

## Parties

1.  Plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia are the duly appointed Co-Personal Representatives for the Estate of Jay Darwin Mejia Guzman and are residents of Lawrence, Middlesex County, Massachusetts.

2.  Defendant, United States of America is the appropriate Defendant named in place of its agents, servants and employees, including but not limited to Diane Smith, M.D., Karen Glatfelter, M.D., Theodoros Kapetanakis, M.D. and Greater Lawrence Family Health Center, located in Lawrence, Middlesex County, Massachusetts, under the Federal Tort Claims Act.

## Facts Common to All Counts

3.  This is a complaint for damages arising from substandard medical care rendered to Yolanny Guzman Baez De Mejia and Jay Darwin Mejia Guzman by the United States of America. Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of its agents, servants and employees, including but not limited to Diane Smith, M.D., Karen Glatfelter, M.D., Theodoros Kapetanakis, M.D. and Greater Lawrence Family Health Center, which is a federally funded health clinic. As a direct result of the substandard care rendered by the defendants, Jay Darwin Mejia Guzman suffered an intrauterine fetal demise on 02/18/19.

4.  The Jurisdiction of this Court is lawful under 28 U.S.C. § 1346(b) and proper as the plaintiff lives in Massachusetts.

5.  Venue is proper within this district under 28 U.S.C. § 1402(b) as the acts complained of occurred in the District of Massachusetts.

6.  The plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and all statutory prerequisites to the filing of this complaint have been satisfied.

7. In February 2019, Yolanny Guzman Baez De Mejia was 27 years old (Gravida 2, Para 1), awaiting the birth of her second child. Her first child had been delivered on 8/22/17 (8lb. 7 oz.) by Cesarean section at 38/5 weeks for fetal indication related to fetal intolerance to labor.

8. Mrs. Guzman Baez De Mejia received her obstetrical care at the Greater Lawrence Family Health Center and Lawrence General Hospital. Her estimated due date (EDD) by ultrasound was 02/27/19. During her pregnancy, Mrs. Guzman Baez De Mejia developed gestational diabetes, polyhydramnios, and thrombocytopenia. She was treated with Metformin to control her diabetes.

9. From 09/20/18 through 02/18/19, Mrs. Guzman Baez De Mejia presented to the hospital for Nonstress Tests (NSTs) and ultrasound Biophysical Profiles (BPPs) to assess the wellbeing of her baby.

10. On 09/20/18, an obstetrical ultrasound was performed for size and dates. The findings included a normally-shaped gestational sac containing a live intra-uterine gestation with a calculated gestational age of 17 weeks 1 day and an EDD of 2/27/19. The FHR was 147 beats per minute (normal range 120 – 160 bpm).

11. On 11/1/18, an ultrasound established the gestational age at 23 weeks 6 days and appropriate interval growth, with the EDD recalculated to 2/22/2019.

12. On 12/14/18 Mrs. Guzman Baez De Mejia was referred to Maternal Fetal Medicine for suspected pregestational diabetes and underwent a complete ultrasound examination to assess fetal anatomy and growth. According to the report, the EDD was 2/22/19 and the fetal anatomy was normal. The estimated fetal weight calculation was 53% and a repeat evaluation for fetal growth was scheduled for 4 weeks.

13. On 01/03/19, an ultrasound BPP was performed with the established gestational age of 32 weeks, 6 days. The BPP results were found normal with a normal amniotic fluid index.

14. On 01/10/19, an ultrasound BPP was performed with a score of 8/8. According to the addendum, the estimated gestational age was correlated with maternal fetal medicine and the 12/14/18 report, placing it at 33 weeks 6 days, with an EDD of 2/22/19. A nonstress test (NST) performed on the same day was found reactive.

15. On 01/14/19, a scheduled NST was performed. As documented in the record at approximately 10:08 p.m., there were no accelerations on the first 60 minutes of fetal heart tracing, but otherwise 145 beats per minute with moderate variability, and no decelerations. There were multiple accelerations after this period, but determined the NST did not meet the criteria for a reactive NST and Mrs. Guzman Baez De Mejia was sent for a BPP. The BPP was 8/8 and normal and Mrs. Guzman Baez De Mejia was discharged home with a repeat NST to be performed on 01/17/19.

16.     Mrs. Guzman Baez De Mejia presented to Lawrence General Hospital on 01/17/19 for the NST and BPP and reported fetal movement. The NST was documented as nonreactive with a baseline FHR of 140, moderate variability, and 1 acceleration over 40 minutes and Mrs. Guzman Baez De Mejia was sent for a BPP.  The BPP was normal at 8/8 and Mrs. Guzman Baez De Mejia was discharged home with a repeat NST/BPP scheduled for 01/21/19.

17.     On 01/21/19, Mrs. Guzman Baez De Mejia presented for her NST/BPP and reported positive fetal movement.  The NST was noted as reactive with baseline heart rate of 140, positive accelerations, no decelerations, and moderate variability.  The BPP was reported as normal and she was to continue with antenatal testing with twice weekly NST's, weekly BPP's, and every 3 weeks growth scans.

18.     On 01/24/19, Mrs. Guzman Baez De Mejia presented for her scheduled NST/BPP. The NST was determined to be nonreactive with 10x10 accelerations (10 beats per minute above baseline for 10 seconds), none making the 15x15 (15 beats per minute above baseline for 15 seconds). Per the report, the BPP was normal with borderline polyhydramnios (AFI 25.0), and she was to report to the high-risk clinic the following day.

19.     On 01/28/19, Mrs. Guzman Baez De Mejia presented to Lawrence General Hospital as scheduled for the NST and BPP.  According to the record, the NST did not meet the criteria for reactivity with 145 FHR, moderate variability, 1 acceleration, and no decelerations.  The BPP was normal with a score of 8/8 and borderline polyhydramnios with the AFI increasing to 27.  Also documented was the estimated fetal weight (EFM) during this time was 3764 grams (greater than 99th percentile).

20.     On 01/31/19, Mrs. Guzman Baez De Mejia was scheduled for her NST for gestational diabetes mellitus.  She reported positive fetal movement and the NST met the criteria for reactivity with the baseline FHR of 145, accelerations to 160, moderate variability, and no decelerations.

21.     On 02/04/19, Mrs. Guzman Baez De Mejia arrived for her scheduled NST and BPP. The FHR was reported at baseline 145 with accelerations to 160 and moderate variability. The BPP was 8/8 with the AFI of 9.8, which was reported as normal.

22.     On 02/07/19, Mrs. Guzman Baez De Mejia presented for her scheduled NST.  The NST met the criteria for reactivity with the baseline FHR 145, moderate variability, accelerations were present, and no decelerations were noted.

23.     On 02/11/19, Mrs. Guzman Baez De Mejia presented to Lawrence General Hospital and had a BPP that was found normal; the AFI of 23 was slightly high/top normal.  The NST was reactive, with a FHR of 140, moderate variability, positive accelerations, and no decelerations. Mrs. Guzman Baez De Mejia was noted to have 1 contraction per 10 min per toco, which she did not feel.  The plan was to continue twice weekly NSTs and weekly BPPs, with a repeat Cesarean to be performed in 8 days.

24. On the morning of 02/18/19, Mrs. Guzman Baez De Mejia presented to the Lawrence General Hospital for her NST and BPP. At approximately 9:41 a.m., the BPP was performed and found a single live intrauterine gestation; EGA of 38 weeks 5 days, with an estimated due date of 2/27/2019. The BPP score was 8/8 with normal fetal movements, fetal breathing movements, fetal tone, and amniotic fluid volume, the AFI was elevated at 24.81, significant for mild polyhydramnios. The FHR was 147 beats per minute, the placenta was fundal; and the fetus was in a vertex position.

25. Following the BPP, she presented for the NST. After being on the monitor for 1.5 hours, the NST was found nonreactive with a baseline FHR of 140, minimal variability, with only 1 acceleration, and no decelerations.

26. On 02/18/19, at 11:16:48, Mrs. Guzman Baez De Mejia was repositioned right tilt because it was difficult to trace her baby and GLFH (Greater Lawrence Family Health) was notified. At 11:37:36, the nurse noted that it was difficult to trace the baby due to polyhydramnios. At 11:45:33, the decision was made to do the Cesarean that day, rather than the following morning.

27. On 02/18/19, at 11:55 a.m., Diane Smith, M.D. reviewed the NST with Karen Glatfelter, M.D., and Dr. Glatfelter agreed with Dr. Smith's note. At approximately 11:58 a.m., Dr. Smith noted that the BPP was 8/8 that day, but after 1.5 hours on the FHT, the nonstress test was nonreactive with minimal variability, only 1 accel, a FHR of 140, and no decelerations. Dr. Smith reviewed the case with Dr. Theodore Kapetanakis and the anesthesiologist, and planned for a non-urgent repeat Cesarean later that day due to the abnormal NST. After discussing the case with Dr. Glatfelter, Dr. Kapetanakis, and Dr. Lesyuk, Dr. Smith allowed Mrs. Guzman Baez De Mejia go home after the abnormal NST.

28. Mrs. Guzman Baez De Mejia was at higher risk of fetal compromise due to gestational diabetes, polyhydramnios, and macrosomia. The nonstress test was nonreactive which indicated that the baby was suffering hypoxemia at that time, which is a medical emergency, and increases the risk of fetal death. It was difficult to trace the baby due to polyhydramnios, even with position changes. The abnormal NST was concerning enough that the Cesarean was rescheduled to that afternoon. However, Mrs. Guzman Baez De Mejia was allowed to leave the hospital instead of the delivery of her baby, which is what the standard of care required.

29. Approximately 2 hours later, at 2:00 p.m., Mrs. Guzman Baez De Mejia was readmitted to Lawrence General Hospital. Dr. Smith now noted that Mrs. Guzman Baez De Mejia had decreased fetal movement over the last 3 hours. Dr. Smith was unable to locate the FHR with the fetal monitor. An ultrasound performed found absent fetal cardiac activity. Jay Darwin had suffered an IUFD and Mrs. Guzman Baez De Mejia had suffered the loss of her son.

30. A Cesarean was elected and performed by Erin Bassett Novoa, M.D. and Theodoros Kapetanakis, M.D. The amniotomy followed with meconium-tinged fluid and there were no signs of life upon delivery. A distended abdomen was noted and there were no obvious cord knots.

31. Pediatrics was called to attend the delivery with fetal demise and to evaluate the infant physically. The fetal ultrasound showed ascites prior to delivery and the infant was born

with no tone, complete cyanosis, and no heartbeat. The infant was dried and continued to have no heart rate and the parents were aware that there would be no resuscitation due to infant fetal demise. The pediatrician noted that the infant had a very distended, firm abdomen, with organomegaly and had bleeding from bilateral nares left greater than right. The infant was large for gestational age at 11 lbs., 4.8 oz. and had a post-mortem meconium stool. The family decided to pursue autopsy and IUFD workup was initiated, with results pending at time of discharge.

32. The Autopsy documented that postmortem examination revealed significant fetal macrosomia (5,111 grams) with associated organomegaly involving multiple organs including the heart, liver, and kidneys. It was reported that this finding correlated with the maternal clinical history of diabetes mellitus and obesity. Further, fetal weights greater than or equal to 5000 grams are associated with an increased risk of stillbirth and neonatal mortality, including intrauterine asphyxia. The enlarged spleen and liver was determined to be likely related to fetal stress and meconium aspiration that was an additional indicator of stress in the fetus. There were no congenital anomalies identified and the likely contributing factors of the intrauterine fetal death were fetal macrosomia and associated organomegaly.

33. Jay Darwin suffered a premature and preventable intrauterine death, and Mrs. Guzman Baez De Mejia suffered the loss of her full-term infant due to the failure to properly monitor and treat her high-risk pregnancy following the nonreactive nonstress test, by allowing her to go home, when the standard of care required continuous fetal monitoring and urgent Cesarean delivery. To a reasonable degree of medical certainty, the intrauterine fetal death suffered by Mrs. Guzman Baez De Mejia and Jay Darwin Mejia Guzman was the direct result of the substandard care rendered by Diane Smith, M.D., Karen Glatfelter, M.D., and Theodoros Kapetanakis, M.D.

34. The nonstress test (NST) is used to assess fetal wellbeing before labor begins; the presence of fetal movements and heart rate acceleration are the most important indicators of the NST. This test is used to determine fetal risk for intrauterine death, most often secondary to high-risk pregnancies or fetal hypoxemia noted at the time of the test. The NST identifies the factors of fetal neurological status and cardiovascular responses that disappear earliest with worsening compromise of the fetus.

35. A non-reactive NST, when combined with risk factors such as gestational diabetes mellitus, polyhydramnios, and a very large baby, indicates that urgent and immediate obstetrical intervention is necessary to prevent harm to the infant.

36. The accepted standard of care in February 2019 to the present required the average qualified obstetrician/gynecologist treating a patient with gestational diabetes mellitus, polyhydramnios, and a large for gestational age baby with a non-reactive nonstress test to provide continuous fetal monitoring and plan for an urgent Cesarean delivery of the baby.

37. To a reasonable degree of medical certainty, the care and treatment rendered to Yolanny Guzman Baez De Mejia and Jay Darwin Mejia Guzman on 2/18/19 by Diane Smith, M.D., fell below the accepted standard of care for the average qualified obstetrician/gynecologist when Dr. Smith 1) failed to recognize the significance of the non-reactive nonstress test in a high-

risk pregnancy; 2) failed to explain the significance of the nonreactive NST and potential complications including intrauterine fetal death to Mrs. Guzman Baez De Mejia; 3) allowed Mrs. Guzman Baez De Mejia to leave the hospital; 4) failed to order, recommend, and perform continuous fetal monitoring and plan for urgent Cesarean section; and 5) failed to recognize that she lacked the skill, knowledge and expertise to appropriately treat Mrs. Guzman Baez De Mejia and her son.

38.  As a direct result of Dr. Smith's substandard care as set forth above, Jay Darwin Mejia Guzman suffered an intrauterine death and Mrs. Guzman Baez De Mejia suffered the loss of her son. Had Dr. Smith complied with the accepted standards of care, Mrs. Guzman Baez De Mejia would have been on continuous fetal monitoring, scheduled for urgent Cesarean delivery, and more likely than not, Jay Darwin would have been delivered prior to his intrauterine fetal demise, thereby preventing his premature and preventable death.

39.  Toa reasonable degree of medical certainty, the care and treatment rendered to Yolanny Guzman Baez De Mejia and Jay Darwin Mejia Guzman on 2/18/19 by Karen Glatfelter, M.D., fell below the accepted standard of care for the average qualified obstetrician/gynecologist when Dr. Glatfelter 1) failed to recognize the significance of the non-reactive nonstress test in a high-risk pregnancy; 2) failed to explain the significance of the nonreactive NST and potential complications including intrauterine fetal death to Mrs. Guzman Baez De Mejia; 3) allowed Mrs. Guzman Baez De Mejia to leave the hospital; 4) failed to order, recommend, and perform continuous fetal monitoring and plan for urgent Cesarean section; and 5) failed to recognize that she lacked the skill, knowledge and expertise to appropriately treat Mrs. Guzman Baez De Mejia and her son.

40.  As a direct result of Dr. Glatfelter's substandard care as set forth above, Jay Darwin Mejia Guzman suffered an intrauterine death and Mrs. Guzman Baez De Mejia suffered the loss of her son. Had Dr. Glatfelter complied with the accepted standards of care, Mrs. Guzman Baez De Mejia would have been on continuous fetal monitoring, scheduled for urgent Cesarean delivery, and more likely than not, Jay Darwin would have been delivered prior to his intrauterine fetal demise, thereby preventing his premature and preventable death.

41.  To a reasonable degree of medical certainty, the care and treatment rendered to Yolanny Guzman Baez De Mejia and Jay Darwin Mejia Guzman on 2/18/19 by Theodoros, Kapetanakis, M.D., fell below the accepted standard of care for the average qualified obstetrician/gynecologist when Dr. Kapetanakis 1) failed to recognize the significance of the non-reactive nonstress test in a high-risk pregnancy; 2) failed to explain the significance of the nonreactive NST and potential complications including intrauterine fetal death to Mrs. Guzman Baez De Mejia; 3) allowed Mrs. Guzman Baez De Mejia to leave the hospital; 4) failed to order, recommend, and perform continuous fetal monitoring, and plan for urgent Cesarean section; and 5) failed to recognize that he lacked the skill, knowledge and expertise to appropriately treat Mrs. Guzman Baez De Mejia and her son.

42.  As a direct result of Dr. Kapetanakis' substandard care as set forth above, Jay Darwin Mejia Guzman suffered an intrauterine death and Mrs. Guzman Baez De Mejia suffered the loss of her son. Had Dr. Kapetanakis complied with the accepted standards of care, Mrs.

Guzman Baez De Mejia would have been on continuous fetal monitoring, scheduled for urgent Cesarean delivery, and more likely than not, Jay Darwin would have been delivered prior to his intrauterine fetal demise, thereby preventing his premature and preventable death.

43. The care and treatment rendered to Mrs. Guzman Baez De Mejia and Jay Darwin Mejia Guzman by Diane Smith, M.D., Karen Glatfelter, M.D., and Theodoros Kapetanakis, M.D., fell below the accepted standard of care for the average qualified obstetrician directly resulting in Jay Darwin's premature and preventable death.

## Count I.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, are the duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman and are residents of Lawrence, Middlesex County, Massachusetts.

2. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Diane Smith, M.D., Karen Glatfelter, M.D., and Theodoros Kapetanakis, M.D. were employees of Greater Lawrence Family Health Center, which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

3. This action is brought to recover for the wrongful death of Jay Darwin Mejia Guzman for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

4. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

5. All statutory conditions precedent to filing suit have been met.

6. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff and the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff and plaintiff's decedent's condition on or about 2/18/19.

7. On or about 2/18/19, the plaintiff and the plaintiff's decedent submitted themselves to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's and the plaintiff's decedent's health and well-being, treated the plaintiff and the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 2/18/19.

8. The death of Jay Darwin Mejia Guzman and the damage to his estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, United States of America, by its agents, servants, or employees, including, but not limited to the following:

    a. Defendant's misrepresentations to the plaintiff's decedent that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's and the plaintiff's decedent's medical condition on or about 2/18/19;

b. Defendant's failure to adequately and properly diagnose the plaintiff's and the plaintiff's decedent's medical condition on or about 2/18/19, and its failure to prescribe proper and timely treatment for said condition;

c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff and the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff and the plaintiff's decedent with acceptable medical and diagnostic services;

d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff and the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition; and

f. Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

9. The plaintiffs did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 2/18/19, which is less than two (2) years from the presentment of their administrative tort claim on 1/25/21. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count II.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia , as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeat and reaver all of the allegations contained in Paragraphs One through Nine of Count I above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Jay Darwin Mejia Guzman.

3. As the direct and proximate result of the carelessness and negligence of the defendant, United States of America, by its agents, servants, or employees, the decedent, Jay Darwin Mejia Guzman, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray

judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count III.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, are the duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman and are residents of Lawrence, Middlesex County, Massachusetts.

2. The plaintiffs repeat the allegations set forth above as if fully contained herein.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Diane Smith, M.D., Karen Glatfelter, M.D., and Theodoros Kapetanakis, M.D. were employees of Greater Lawrence Family Health Center, which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. This action is brought to recover for the wrongful death of Jay Darwin Mejia Guzman for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

5. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

6. All statutory conditions precedent to filing suit have been met.

7. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff and the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff and the plaintiff's decedent's condition on or about 2/18/19.

8. On or about 2/18/19, the plaintiff and the plaintiff's decedent submitted themselves to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff and the plaintiff's decedent's health and well-being, treated the plaintiff and the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 2/18/19.

9. The death of Jay Darwin Mejia Guzman and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, or by the gross negligence of the defendant on or about 2/18/19.

10. The plaintiffs did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 2/18/19, which is less than two (2) years from the presentment of their administrative tort claim on 1/25/21. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count IV.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeat and reaver all of the allegations contained in Paragraphs One through Ten of Count III above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Jay Darwin Mejia Guzman.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, the decedent, Jay Darwin Mejia Guzman, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count V.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeat and reaver all of the allegations contained in Paragraphs One through Nine of Count I above, as if expressly rewritten and set forth herein.

2. On or about 2/18/19, the defendant, United States of America, by its agents, servants, or employees, contracted with the plaintiff and the plaintiff's decedent to provide professional services related to the plaintiff's and plaintiff's decedent's medical care and treatment.

3. The defendant, United States of America, by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff and the plaintiff's decedent that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

4. On or about 2/18/19, the defendant, United States of America, by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty, which breach resulted in the death of Jay Darwin Mejia Guzman.

5. The death of Jay Darwin Mejia Guzman and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, United States of America's breach of express and implied warranties.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia , as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VI.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count V above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Jay Darwin Mejia Guzman.

3. As the direct and proximate result of the breach of express and implied warranties by the defendant, United States of America, by its agents, servants, or employees, the plaintiff's decedent, Jay Darwin Mejia Guzman, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count VII.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia , as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeat and reaver all of the allegations contained in Paragraphs One through Ten of Count III above, as if expressly rewritten and set forth herein.

2. On or about 2/18/19, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff and the plaintiff's decedent.

3. On or about 2/18/19, the defendant, United States of America, by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff and the plaintiff's decedent.

4. On or about 2/18/19, the defendant, United States of America, by its agents, servants, or employees, did not inform the plaintiff and the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff and the plaintiff's decedent.

5. If the defendant, United States of America, by its agents, servants, or employees, had informed the plaintiff and the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff and the plaintiff's decedent, neither the plaintiff, the plaintiff's decedent nor a reasonable person in their position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and the plaintiff's decedent and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

7. The death of Jay Darwin Mejia Guzman and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to obtain the informed consent of the plaintiff and the plaintiff's decedent.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VIII.

1. The plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count VII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, Jay Darwin Mejia Guzman.

3. As the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, Jay Darwin Mejia Guzman, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiffs, Yolanny Guzman Baez De Mejia and Joel Elias Mejia, as duly appointed Co-Personal Representatives of the Estate of Jay Darwin Mejia Guzman, pray judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

PLAINTIFFS CLAIM TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully submitted,
The plaintiffs,
By their attorney,


/s/ Adam R. Satin
ADAM R. SATIN, BBO# 633069
LYNN I. HU, BBO# 690823
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447

13